UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICHARD R. SAINTCALLE, | CASE NO. C06-0040-MJP |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| C/O L. RODRIGUEZ, et al., | |
| Defendants. | |

INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff is a state prisoner who is currently incarcerated at the Monroe Correctional Complex in Monroe, Washington. He brings this civil rights action under 42 U.S.C. § 1983 to allege violations of his constitutional rights while in the custody of the King County Department of Adult and Juvenile Detention in 2003. Specifically, plaintiff alleges that King County Corrections Officers Luis Rodriguez and Mark Hurt violated his due process rights by failing to protect him from a physical attack by his son, Kirk SaintCalle, during plaintiff's criminal trial in King County Superior Court.

Defendants now move for summary judgment. Plaintiff has filed a response to defendants'

REPORT AND RECOMMENDATION
PAGE -1

01 motion and defendants have filed a reply brief in support of their motion. The briefing is complete

02 and defendants' motion for summary judgment is now ripe for review. This Court, having

03 reviewed defendants' motion, and the balance of the record, concludes that defendants' motion

04 for summary judgment should be granted and this action should be dismissed with prejudice.

05 FACTS

06 Plaintiff Richard SaintCalle and Kemhare Germain had two children together, Kirk, born

07 in 1985, and Elizabeth, born in 1989. (Dkt. No. 36-2 at 2.) On the evening of August 14, 2002,

08 at approximately 11:30 p.m., plaintiff met Ms. Germain in the parking lot of her apartment

09 complex. (*Id*.) They engaged in a heated discussion until approximately 1:00 a.m. on August 15,

10 2002. (*Id*.) Ms. Germain then went into her apartment and locked the door. (*Id*.) Her daughter

11 Elizabeth was in the apartment seated on the sofa. (*Id*.) Plaintiff shot through the door with a

12 shotgun and entered the apartment. (*Id*.) Plaintiff asked Elizabeth where her mother was and then

13 shot Elizabeth twice, at close range, severely injuring her. (*Id*.) Plaintiff proceeded into the

14 master bedroom and shot Ms. Germain twice, at close range, killing her. (*Id*.)

15 Witnesses saw plaintiff leave the apartment and drive away in his car. (*Id*.) Police, who

16 had responded to a 911 call, followed plaintiff's car with their lights and sirens activated. (*Id*.)

17 Plaintiff led police on a high speed chase, reaching speeds of up to 125 miles per hour, and did not

18 stop until a police car rammed into his car, causing it to crash. (*Id*.) Plaintiff was booked into the

19 King County Jail at the Regional Justice Center on the morning of August 15, 2002, for

20 investigation of homicide, investigation of attempted homicide, and investigation of felony flight.

21 (Dkt. No. 39, Ex. 2-B.)

22 On August 19, 2002, an information was filed in King County Superior Court charging

REPORT AND RECOMMENDATION
PAGE -2

01  plaintiff with the crimes of murder in the first degree, attempted murder in the first degree, and

02  attempting to elude a pursuing police vehicle. (Dkt. No. 36, Ex. 1-B.)  Bail was originally set at

03  $2,000,000, but was later raised to $4,000,000.  (*Id.*, Exs. 1-B and 1-C.)  Plaintiff's criminal trial

04  began on October 12, 2003, before King County Superior Court Judge Richard McDermott, and

05  ended on November 13, 2003.  (Dkt. No. 38 at 1-2.)

06       Defendants Rodriguez and Hurt are both employed as corrections officers for the King

07  County Department of Adult Detention.  (Dkt. No. 38 at 1; Dkt. No. 39 at 1.)  Both were

08  assigned to the court detail for plaintiff's trial.  ( *Id.*)  Court detail officers are responsible for

09  transporting inmates to and from court, medical appointments, and other destinations as required.

10  (*Id.*)  Defendant Rodriguez spent a considerable amount of time with plaintiff while transporting

11  him to and from court during the course of the month-long trial. (Dkt. No. 39 at 1-2.) Defendant

12  Hurt  transported plaintiff to and from court on fifteen of the trial days. (Dkt. No. 38 at 2.)  At

13  no time during the course of his contact with defendants did plaintiff ever report to either of them

14  that he had been threatened by his son or by anyone else. (Dkt. No. 38 at 2; Dkt. No. 39 at 2.)

15       Kirk SaintCalle ("Kirk") testified at plaintiff's trial on October 29, 2003.  (Dkt. No. 39 at

16  2.)  The day before Kirk testified, the trial judge discussed courtroom security issues with the

17  parties and with an unidentified custodial officer because of concerns regarding Kirk's behavior

18  while on the stand.[1]  (*See* Dkt. No. 46, Ex. 4A.)  Among the determinations made at that time was

19  that the two court detail officers who transported plaintiff to the courtroom, and the two court

20  detail officers who transported Kirk, would all remain in the courtroom while Kirk testified. (*See*

21

22       [1] Kirk was in custody at that time and was therefore to be transported to court by court
     detail officers. (Dkt. No. 39 at 2.)

01 Dkt. No. 46, Ex. 4A.) Defendants concede that they were both in the courtroom on October, 28,

02 2003, however, neither apparently recalls the substance of any discussions that occurred in the

03 courtroom on that date. (*See* Dkt. No. 43, Ex. J at 3 and Ex. K at 3.) According to plaintiff, both

04 defendants participated in the discussion regarding courtroom security on that date. (Dkt. No. 43

05 at 8.)

06       Only defendant Rodriguez was present in the courtroom on the day Kirk testified. (*See*

07 Dkt. No. 38 at 2 and Dkt. No. 39 at 2.) Defendant Rodriguez recalls that Kirk was angry and

08 expressed animosity towards plaintiff during his testimony, but does not recall the specifics of

09 Kirk's testimony. (Dkt. No. 39 at 2.) Kirk, in fact, admitted during his testimony that since his

10 mother was killed and his sister was shot he had threatened to kill plaintiff. (Dkt. No. 46, Ex. 4B.)

11       On November 12, 2003, defendants transported plaintiff to court for closing arguments.

12 (Dkt. No. 38 at 2; Dkt. No. 39 at 2.) Kirk, who had been released from custody, was in the

13 courtroom for closing arguments. (Dkt. No. 38 at 2; Dkt. No. 39 at 2.) He was seated in the

14 second row behind the prosecutor's table with other family members and friends of the victims.

15 (*Id*.) Kirk was not disruptive during the closing arguments nor did he act in any way that would

16 indicate he would cause problems. (*Id*.)

17       At the conclusion of closing arguments, after the jury had returned to the jury room, Kirk

18 rushed forward and swung at plaintiff's head. (Dkt. No. 38 at 2; Dkt. No. 39 at 3.) Defendant

19 Rodriguez, who was standing next to plaintiff at that time preparing to place him into handcuffs,

20 attempted to deflect Kirk's arm with his shoulder. (Dkt. No. 39 at 3.) Kirk, however, was

21 apparently able to make some contact with the side of plaintiff's head. (*Id*.; *see also*, Dkt. No. 46,

22 Ex. 4C.) Plaintiff dropped to the floor, and defendants Rodriguez and Hurt grabbed Kirk and took

01   him to the floor. (Dkt. No. 39 at 3.) Federal Way Police Detective Tom Robinson, who was

02   present in the courtroom, assisted defendants in restraining and handcuffing Kirk. (Dkt. No. 38

03   at 2; Dkt. No. 39 at 3.) After Kirk was restrained, defendant Rodriguez picked plaintiff up off the

04   floor and took him to a holding cell. (*See* Dkt. No. 38 at 3; Dkt. No. 39 at 3.) Detective

05   Robinson placed Kirk under arrest at the direction of Judge McDermott. (*Id.*)

06   　　　Plaintiff states that he was knocked-out cold by Kirk's blow and that he fell to the ground

07   unconscious. (Dkt. No. 43 at 4.) Defendant Rodriguez, in contrast, states that plaintiff was

08   conscious and alert at all times and that he did not have any difficulty walking or moving. (Dkt.

09   No. 39 at 3.) Defendant Rodriguez further states that he visually examined plaintiff after the

10   incident and plaintiff did not appear to be injured, but he did appear to be angry. (*Id.*)

11   　　　Medical staff responded to a "Medical Status II court detail call" shortly after the incident.

12   (*See* Dkt. No. 47 at 2 and 4.) The nurse who responded to that call noted that plaintiff was pacing

13   in his cell and was refusing any medical help until he could be seen by his attorney. (*See id.*) The

14   nurse also noted that plaintiff refused to sign the refusal of treatment form. (Dkt. No. 47 at 2 and

15   4.) Finally, the nurse noted that plaintiff did not appear to be in any discomfort, but that he did

16   appear to be angry. (*Id.*)

17   　　　The nurse returned a short time later, at the request of the officer in charge of the court

18   detail, to examine plaintiff. (*Id.*) At that time, plaintiff complained of migraine-like pain on the

19   right side of his head radiating to his neck. (*Id.*) The nurse took plaintiff's blood pressure and

20   conducted a neurological check, which was apparently normal. (*Id.*) The nurse indicated in her

21   notes that a neurological check, and a blood pressure reading, would be conducted each shift.

22   (*Id.*)

REPORT AND RECOMMENDATION
PAGE -5

01        Plaintiff was seen by another nurse on the evening of November 12, 2003. (*Id.*) At that

02 time, plaintiff complained of right parietal discomfort as well as tongue and jaw aches. (Dkt. No.

03 47 at 2-4.) Plaintiff denied, however, being struck in the jaw/mouth. *Id.* at 3-4.) The nurse who

04 evaluated plaintiff that evening observed no signs of injury to the right side of plaintiff's face or

05 mouth and noted that plaintiff's neurological check was normal. ( *Id.*) Plaintiff's neurological

06 checks were all normal and were discontinued the following day. (*Id.* at 3-4 and 6.)

07        On November 16, 2003, four days after the incident, plaintiff requested that he be seen by

08 a nurse for bleeding in his nose. (*See* Dkt. No. 43, Ex. H at 1.) He reported at that time that he

09 was experiencing head tremors and that he felt he should be transported to the hospital for an

10 MRI. (*See* Dkt. No. 43, Ex. H at 1 and Dkt. No. 47 at 5.) The nurse observed a small ulcer in

11 plaintiff's nose, but did not observe any tremors. (Dkt. No. 47 at 5.)

12        Plaintiff was convicted of aggravated first degree murder, attempted first degree murder,

13 and attempting to elude a police officer on November 13, 2003. (*See* Dkt. No. 36-6 at 2.) On

14 December 19, 2003, plaintiff was sentenced to a term of life imprisonment. (*Id.* at 5.)

15        Plaintiff filed the instant civil rights complaint in January 2006, and the complaint was

16 thereafter ordered served on defendants. (Dkt. Nos. 6 and 7.) After defendants answered the

17 complaint, the Court established pre-trial deadlines, including a discovery deadline of August 15,

18 2006, and a dispositive motion filing deadline of September 15, 2006. (Dkt. No. 34.) Defendants

19 filed their summary judgment motion in August 2006. (Dkt. No. 35.) In support of their motion,

20 defendants submitted the declarations of defendants Rodriguez and Hurt, and a declaration of their

21 attorney, Kerry Keefe. (*See* Dkt. Nos. 36, 38, and 39.) Plaintiff filed a response and declaration

22 in opposition to defendants' motion, (*see* Dkt. Nos. 42 and 43), and defendants filed a reply brief

REPORT AND RECOMMENDATION
PAGE -6

01   and a second declaration of Ms. Keefe in support of their motion (*see* Dkt. Nos. 45 and 46).

02   In conjunction with his response to defendants' summary judgment motion, plaintiff also
03   filed a motion for appointment of counsel. (*See* Dkt. No. 40.) After the briefing was complete
04   on defendants' summary judgment motion, plaintiff filed motions for an order to obtain the King
05   County Jail records of Kirk, and for issuance of a subpoena duces tecum to obtain additional
06   evidence from his trial counsel. (*See* Dkt. Nos. 49 and 51.) Defendants have filed responses to
07   plaintiff's pending motions, and those motions will be addressed herein.

08   DISCUSSION

09   Summary Judgment Standard

10   Summary judgment is appropriate when, viewing the evidence in the light most favorable
11   to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the
12   moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact
13   is a fact relevant to the outcome of the pending action. *See Anderson v. Liberty Lobby, Inc.*, 477
14   U.S. 242, 248 (1986). Genuine issues of material fact are those for which the evidence is such that
15   "a reasonable jury could return a verdict for the nonmoving party." *Id*.

16   In response to a properly supported summary judgment motion, the nonmoving party may
17   not rest upon mere allegations or denials in the pleadings, but must set forth specific facts
18   demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the
19   existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of
20   evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on
21   summary judgment, the court does not weigh evidence to determine the truth of the matter, but
22   "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547,

549 (9th Cir. 1994).

### Failure to Protect Claim

Plaintiff asserts in his complaint that he was attacked by his son Kirk in open court on November 12, 2003, while in the custody of King County Corrections Officers Rodriguez and Hurt. (*See* Dkt. No. 6.) Plaintiff alleges that defendants Rodriguez and Hurt knew his attacker was in the courtroom. He further alleges that defendants should have known plaintiff faced a substantial risk of injury or death at the hands of his attacker and that they disregarded that risk.

Section 1983 requires a claimant to prove (1) that a person acting under color of state law (2) committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). There is no dispute here that the defendants acted under color of state law. The sole issue is whether the defendants' conduct deprived plaintiff of a federally protected right.

In *Redman v. County of San Diego*, 942 F.2d 1435 (9th Cir. 1991), the Ninth Circuit recognized the right of a pretrial detainee to be personally secure while in the custody of the State. The Ninth Circuit held that in order to show that officials violated that right, a plaintiff must show that they acted with "deliberate indifference" towards the safety of the plaintiff. *Id.* at 1443. The Ninth Circuit further held that "conduct that is so wanton or reckless with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur, will also suffice to establish liability because it is conduct equivalent to a deliberate choice. This may be termed 'reckless indifference.'" *Id.* (citations omitted). Both terms – "deliberate" or "reckless" indifference – connote states of mind that are more blameworthy than mere negligence. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

01          Defendants deny that they were deliberately indifferent or showed a reckless disregard to

02   plaintiff's safety.  In their declarations offered in support of their summary judgment motion,

03   defendants state that plaintiff never reported to them that he was receiving or had received threats

04   from Kirk, or that Kirk was behaving in such a way in the courtroom on November 12, 2003, that

05   would lead them to believe that he was going to cause problems.  They further state that Kirk had

06   been present in the courtroom as a spectator on previous days and never gave them any reason to

07   believe he would physically attack his father or be otherwise disruptive in court.  Defendants also

08   point out that Kirk was not under their custody or control at the time of the incident but, rather,

09   was a member of the general public who was attending a public proceeding.  And, because Kirk

10   was not being disruptive while in the courtroom, defendants had no reason, nor any authority, to

11   remove him from the courtroom.

12          Plaintiff, in his response to defendants' motion, argues that even if he did not report to

13   them that he had received threats from Kirk, they had nevertheless been exposed to information

14   concerning the risk posed by Kirk and they therefore should have taken additional steps to ensure

15   plaintiff's safety when Kirk was in the courtroom.  Plaintiff maintains that defendants were

16   exposed to information regarding Kirk's threats while on duty in the courtroom.  He also suggests

17   that defendants were exposed to other information about Kirk which should have put them on

18   notice that Kirk, in fact, posed a significant risk to plaintiff's safety.  The other information cited

19   by plaintiff includes:  (1) plaintiff had reported to jail administrative staff prior to his trial that Kirk

20   had made threats to kill him and/or had solicited other inmates to harm or kill him; (2) Kirk had

21   a violent jail disciplinary record; (3) there were "keep separate" notices against Kirk in plaintiff's

22   jail file; (4) the jail had access to a police report of Kirk's arrest in Federal Way in which Kirk

01 confessed a plan to kill plaintiff; (5) Kirk sent a letter to plaintiff while both were incarcerated in

02 which Kirk threatened to kill him; and, (6) Kirk reiterated his threat to kill plaintiff to the

03 prosecuting attorney when he visited Kirk in prison prior to plaintiff's trial.

04 While plaintiff imputes knowledge of all of this information to defendants, the evidence in

05 the record establishes only that defendants had some exposure in the courtroom to information

06 regarding the animosity that existed between plaintiff and his son.  The record reflects that both

07 defendants were in the courtroom on the day the Court discussed the security measures that were

08 to be employed while Kirk was in the courtroom testifying. (Dkt. No. 43, Ex. J at 3 and Ex. K

09 at 3.)  Though neither defendant apparently now recalls that discussion, the transcript of that

10 proceeding reveals that the prosecutor made reference to the fact that he expected Kirk to

11 acknowledge that he had had thoughts of killing his father. (Dkt. No. 46, Ex. 4A at 4.)  The

12 transcript also reveals that the trial judge expressed his concern about having both Kirk and

13 plaintiff in the courtroom at the same time, and made clear that his concern was about Kirk and

14 not about plaintiff. (*Id*.)

15 On the day Kirk testified, defendant Rodriguez was in the courtroom, but defendant Hurt

16 was not. (Dkt. No. 38 at 2; Dkt. No. 39 at 2.)  While defendant Rodriguez states that he does not

17 now remember specifics about Kirk's testimony, the partial transcript of that proceeding which

18 has been provided to this Court reveals that Kirk testified that he had threatened to kill plaintiff

19 and that he had previously indicated that he had a vendetta for his father. (Dkt. No. 46, Ex. 4B

20 at 3-4.)

21 Based on the foregoing, some knowledge of the possible risk posed by Kirk to plaintiff's

22 safety must be imputed to defendants.  However, even assuming defendants had some knowledge

of the animosity that existed between Kirk and plaintiff, defendants cannot be held liable if they responded reasonably to that risk. *See Farmer*, 511 U.S. at 844-45. Plaintiff argues that defendants should have taken additional steps to protect him in the courtroom including re-positioning themselves when Kirk was in the courtroom to allow them to intercept him, requesting back-up from the court detail sergeant, or informing the bailiff and the judge and requesting that they address the risk created by Kirk's presence.

However, the record does not demonstrate that Kirk's behavior on the day in question warranted any of the steps suggested by plaintiff. Defendants were aware of Kirk's presence, but he was not causing any disruption and defendants therefore had no reason to ask Kirk to leave or to request additional security. The record establishes that the assault happened quickly and without warning. After Kirk swung at, and apparently hit, plaintiff, he was immediately taken to the ground by defendants and put under their control. While plaintiff asserts that he lost consciousness, he provides no evidence to support that assertion and, in fact, the record does not support the conclusion that plaintiff suffered any significant injury as a result of the assault.

There is some question as to where defendants were positioned in the courtroom at the time of the incident. However, defendant Hurt states in his declaration that the courtroom was fairly small. The fact that defendants gained control over Kirk quickly, before he was able to cause any significant injury to plaintiff, lends support to the conclusion that defendants were positioned in fairly close proximity to the counsel tables as both defendants state in their declarations. It is not clear what else defendants might have done, within the limits of their authority, to protect plaintiff in the courtroom on the day of the assault.

Plaintiff has not established that defendants acted with either "deliberate" or "reckless"

REPORT AND RECOMMENDATION
PAGE -11

indifference to his safety. At most, and with the benefit of hindsight, it might be said that defendants acted negligently in failing to anticipate the potential risk posed by Kirk's presence in the courtroom on the day in question. However, as noted earlier, negligence is not sufficient to establish liability in a "failure to protect" claim. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Accordingly, defendants are entitled to summary judgment.

Plaintiff's Pending Motions

Plaintiff has filed three motions which are currently pending before the Court: (1) a motion for appointment of counsel; (2) a motion for an order to obtain the King County Jail records of Kirk SaintCalle; and, (3) a motion for issuance of a subpoena duces tecum to obtain additional evidence from his trial counsel. This Court, having reviewed plaintiff's pending motions, and defendants' responses thereto, concludes that each of plaintiff's motions should be denied.

Plaintiff's motion for appointment of counsel is the second such motion filed during the pendency of this action. (*See* Dkt. No. 8.) As plaintiff was previously advised, there is no right to have counsel appointed in cases brought under 42 U.S.C. § 1983. Although the Court, under 28 U.S.C. § 1915(e)(1), can request counsel to represent a party proceeding *in forma pauperis*, the Court may do so only in exceptional circumstances. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986); *Franklin v. Murphy*, 745 F.2d 1221, 1236 (9th Cir. 1984); *Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir. 1980). A finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. *Wilborn*, 789 F.2d at 1331.

As this Court has concluded that plaintiff should not succeed on the merits, and as the

record demonstrates that plaintiff has ably represented himself in these proceedings, there are no exceptional circumstances which warrant the appointment of counsel in this matter.

Plaintiff's two remaining motions are, in essence, discovery requests. These motions were both filed on October 11, 2006. As noted above, the discovery deadline in this matter was August 15, 2006. Plaintiff should not be permitted to re-open discovery almost two months after the deadline has passed. Additionally, the Court notes that plaintiff makes no showing that the information he seeks by way of these tardy discovery requests is relevant to plaintiff's claims against defendants Rodriguez and Hurt.

## CONCLUSION

Based upon the foregoing, this Court recommends that defendant's motion for summary judgment be granted, and that this action be dismissed with prejudice. This Court further recommends that plaintiff's motion for appointment of counsel, and plaintiff's two discovery motions, be denied. A proposed order accompanies this Report and Recommendation.

DATED this 4th day of December, 2006.

Mary Alice Theiler
United States Magistrate Judge